IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

WILLIAM R. GLASS,

        Plaintiff,

    v.

ARTHUR C. SNELLBAKER and the
CITY OF ATLANTIC CITY,

        Defendants.

---

Civil Action
No. 05-1971 (JBS)

**OPINION**

APPEARANCES:

Michelle J. Douglass, Esq.
THE DOUGLASS LAW FIRM, LLC
1601 Tilton Road
Suite 6
Northfield, NJ 08225
    Attorney for Plaintiff

Kristopher J. Facenda, Esq.
PERSKIE, NEHMAD & PERILLO
P.O. Box 730
Somers Point, NJ 08244
    Attorney for Defendant Arthur Snellbaker

Karen M. Williams, Esq.
JASINSKI & WILLIAMS, PC
1125 Atlantic Avenue
Suite 518
Atlantic City, NJ 08401
    Attorney for Defendant City of Atlantic City

**SIMANDLE, District Judge:**

This matter is before the Court on Plaintiff's motion for attorney's fees [Docket Item 78] pursuant to 42 U.S.C. § 1988. For the reasons explained below, the Court shall grant the motion

in part and award Plaintiff fees in the amount of $138,506.75 and
costs (including paralegal fees) in the amount of $10,898.42.

**I.    BACKGROUND**

Plaintiff brought this action alleging several separate
categories of harm.  The first, related to his retaliatory
transfer and unlawful treatment in violation of First Amendment
rights, was reflected in Counts One and Two of the Complaint.
Count Three was a contract claim. Count Four was an ill-defined
common law claim for denial of process rights.  Counts Five and
Six asserted claims for defamation and interference with
employment relationship, respectively.

On June 14, 2007, this Court granted in part and denied in
part Defendants' motion for summary judgment.  On Count One, the
Court granted summary judgment insofar as Plaintiff was asserting
speech claims, but denied summary judgment on Plaintiff's
association claim.  Count Two, an identical claim under the New
Jersey Constitution, essentially fell out of the case.  The Court
granted summary judgment to Defendants on Count Five, the
defamation claim, and Count Six, the interference with employment
relationship claim.

Plaintiff then went to trial on two categories of claims:
one alleging retaliatory transfer and discharge in violation of
First Amendment rights of association, brought via 42 U.S.C. §
1983, and one alleging violation of process rights in violation

2

of state law, pursuant to N.J.S.A. 40:14-147.  Although the legal
rights asserted in the two claims were distinct, they arose from
much the same nucleus of operative facts.  The first related to
the fact of the retaliatory transfer and poor treatment in the
new position leading to Glass' involuntary retirement, and was
brought pursuant to federal constitutional law.  The second
related to the process to which Plaintiff was allegedly entitled
under New Jersey law as an officer suffering a constructive
demotion.  Therefore, the claims were not based on the same law,
but there was factual overlap as Plaintiff sought to prove he was
treated as if he was demoted into his new position.  At the close
of Plaintiff's case, on January 29, 2008, the Court granted
judgment as a matter of law on the state law claim.  Accordingly,
Plaintiff was not a prevailing party for the work performed on
that state law claim and the time expended between June 14, 2007
and January 29, 2008; to the extent that Plaintiff's counsel's
services relating only to the state law claim can be segregated,
an award of attorney's fees cannot include time devoted solely to
the state law claim.

Plaintiff achieved a jury verdict on the First Amendment
associational claim and judgment was entered on January 31, 2008
in favor of Plaintiff for $796,000 in compensatory damages
against both Defendants and $75,000 against Defendant Snellbaker.
Post-trial motions followed and on September 17, 2008 the Court

remitted the compensatory damage award to $382,400 and entered an amended judgment.

## II.  DISCUSSION

### A.  Plaintiff's Fee Petition

Plaintiff's counsel, Michelle Douglass, Esquire, is a Certified Civil Trial Attorney in New Jersey with twenty years' experience in litigating civil rights cases.  Her firm, The Douglass Law Firm, LLC, although essentially a solo practice, appears frequently in federal and state courts.

In this case, Ms. Douglass seeks reimbursement of fees and costs.  Her petition lists 527.85 hours of her time, to be multiplied by an hourly rate of $300.00, for a total of $158,355.00.  The petition seeks paralegal fees for 102.50 hours at a rate of $75.00 for a total of $7,687.50.  The petition also seeks costs of $6,832.59.  The total of fees and costs, exclusive of interest, amounts to $175,875.06.

Plaintiff also seeks an award of prejudgment and post-judgment interest and an enhancement for any negative tax consequences incurred by Plaintiff.

Defendants oppose this motion for reasons stated in the City of Atlantic City's brief in opposition.  They contest Plaintiff's counsel's hourly rate of $300, claiming it should not be greater than $250, they dispute counsel's time records as reflecting excessive, duplicative and unnecessary work, and they dispute

4

various costs claimed for reimbursement.  Defendants assert that counsel should not be reimbursed for travel time at her full rate, and that time spent on unsuccessful claims must be excluded.  Defendants further argue that the Court should award no interest and no enhancement for tax consequences in this case under 42 U.S.C. § 1988.

Plaintiff's reply brief addresses the alleged excessiveness and necessity in detail, and generally defends the time expended and the fees and costs sought.

## B.   Prevailing Parties Entitled to Reasonable Fee

The law provides that Plaintiff is entitled to reasonable fees in addition to the compensatory damages he obtained in this § 1983 action.  <u>See</u> 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . .a reasonable attorney's fee as part of the costs . . . .").

> Under the "American Rule," parties to litigation are to pay their own attorneys' fees, absent statutory authority and a court order providing otherwise. <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources</u>, 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).  In civil rights cases, Congress has provided such authorization: courts "may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b) ("§ 1988"). Pursuant to this authority, the "prevailing party" in such cases is normally awarded attorneys' fees, absent special circumstances. <u>Truesdell v. Philadelphia Hous. Auth.</u>, 290 F.3d 159, 163 (3d Cir. 2002); <u>City of Morris v. Nationalist Movement</u>, 273 F.3d 527, 535 (3d Cir. 2001).

5

> Parties are considered "prevailing parties" if
> "they succeed on any significant issue in
> litigation which achieves some of the benefits the
> parties sought in bringing suit." <u>J.O. ex rel. C.O.
> v. Orange Twp. Bd. of Educ.</u>, 287 F.3d 267, 271 (3d
> Cir. 2002) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S.
> 424, 433 (1983)) (internal quotation marks
> omitted). To "succeed" under this standard, a party
> must achieve a "court-ordered 'change in the legal
> relationship between the plaintiff and the
> defendant.'" <u>Buckhannon</u>, 532 U.S. at 604 (quoting
> <u>Texas State Teachers Ass'n v. Garland Indep. Sch.
> Dist.</u>, 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L.
> Ed. 2d 866 (1989)).

<u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 231-32 (3d Cir. 2008). There is no doubt in this case that Plaintiff is a prevailing party, as defined in the statute, as he proved liability at trial and, according to this Court's recent opinion on the post-trial motions, will retain substantial awards for compensatory and punitive damages. Accordingly, Plaintiff is entitled to attorney's fees, pursuant to 42 U.S.C. § 1988(b).

The Court shall, therefore, award Plaintiff a reasonable fee for the work expended in this case, computed under the lodestar method:

> A useful starting point for determining the
> reasonableness of the fee is the lodestar
> calculation. Under the lodestar approach, a court
> determines the reasonable number of hours expended
> on the litigation multiplied by a reasonable hourly
> rate. The product of this calculation "is a
> presumptively reasonable fee, but it may still
> require subsequent adjustment."

Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d
Cir. 2008) (citations omitted).  The burden is on plaintiff, as
the prevailing party, to document counsel's efforts and
expenditures and demonstrate the necessity and reasonableness of
counsel's efforts in obtaining the result as prevailing party.

> The party seeking an award of fees should submit
> evidence supporting the hours worked and rates
> claimed. Where the documentation of hours is
> inadequate, the district court may reduce the award
> accordingly.
>
> The district court also should exclude from this
> initial fee calculation hours that were not
> "reasonably expended." S. Rep. No. 94-1011, p. 6
> (1976). Cases may be overstaffed, and the skill and
> experience of lawyers vary widely. Counsel for the
> prevailing party should make a good-faith effort to
> exclude from a fee request hours that are
> excessive, redundant, or otherwise unnecessary,
> just as a lawyer in private practice ethically is
> obligated to exclude such hours from his fee
> submission. "In the private sector, 'billing
> judgment' is an important component in fee setting.
> It is no less important here. Hours that are not
> properly billed to one's *client* also are not
> properly billed to one's *adversary* pursuant to
> statutory authority." Copeland v. Marshall, 641
> F.2d 880, 891 (1980) (en banc) (emphasis in
> original).

Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983).  In addition,
while the prevailing party status is a threshold determination,
it does not necessarily entitle a prevailing plaintiff to fees
for all claims asserted in a case.

> In some cases a plaintiff may present in one
> lawsuit distinctly different claims for relief that
> are based on different facts and legal theories. In
> such a suit, even where the claims are brought

7

against the same defendants -- often an institution and its officers, as in this case -- counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." <u>Davis v. County of Los Angeles</u>, 8 E. P. D., at 5049 [para. 9444 (CD Cal. 1974)]. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

<u>Id.</u> at 434-35.

[A] court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded. This is not to say that the amount of damages is irrelevant to the calculation of counsel fees. To the contrary, we recently recognized that "the amount of the compensatory damages award may be taken into account when awarding attorneys' fees to a civil rights plaintiff." <u>Abrams v. Lightolier</u>, 50 F.3d 1204, 1222 (3d Cir. 1995). But . . . the reason why the damage amount is relevant is not because of some ratio that the court ought to maintain between damages and counsel fees. Rather, the reason has to do with the settled principle, which we discuss hereinafter, that counsel fees should only be awarded to the extent that the litigant was successful. The amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful the plaintiff was in his or her action, and therefore "may be taken into account when awarding attorneys' fees to a civil rights plaintiff." <u>Id.</u>

<u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1041-42 (3d Cir. 1996). However, "[a] request for attorney's fees should not result in a second major litigation." <u>Hensley</u>, 461 U.S. at 437.

**C.   Determining Reasonable Hourly Rate**

The Court must determine what the reasonable hourly rate is for the legal services Plaintiff's counsel provided.

> Generally, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035; see Blum v. Stenson, 465 U.S. 886, 895-96 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984). "[A] district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." Coleman, 87 F.3d at 1510 (emphasis added); see Cunningham v. City of McKeesport, 807 F.2d 49, 52-53 (3d Cir. 1986). The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case. See Washington, 89 F.3d at 1035. Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence.

Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). "The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive." Kenny A. v. Perdue, 454 F. Supp. 2d 1260, 1284 (N.D. Ga. 2006).

In this case, Plaintiff's counsel has submitted several documents in support of her request for a $300 per hour rate, including affidavits of other attorneys. Specifically, Plaintiff has provided affidavits from other plaintiffs' attorneys who indicate that they routinely request at least $300 per hour in contingency fee litigation in civil rights and employment cases.

9

These affidavits of Randolph Lafferty, Paul D'Amato, and Mark Pfeffer, who are experienced trial attorneys in New Jersey's federal and state courts, attest to market rates of $250 to $350 (Pfeffer), or that $300 is reasonable in this market (Lafferty and D'Amato).  Mr. Lafferty indicates that his firm's Board of Directors determined that the experienced attorneys in this field should charge $375 per hour, but there is no indication that clients are paying this fee.  Similarly, Mr. D'Amato, an attorney with somewhat more experience than Ms. Douglass, indicated that his firm's management committee determined that he should charge $500 per hour for contingent fee employment litigation, but with no indication of the fee he actually charges to paying clients in this field of litigation.  Mr. Pfeffer likewise has practiced longer and indicates that in 2004, a Superior Court Judge approved his fee at the rate of $350 per hour in an employment claim tried to a conclusion.

On the other hand, Plaintiff's counsel also submits the hybrid fee agreement that she entered into with her client in this case.  That agreement provided in 2005 that if Plaintiff abandoned the litigation or otherwise failed to cooperate with Plaintiff's counsel, Plaintiff would compensate counsel for her time expended on this litigation at the rate of $250 per hour. (Retainer at 2, Pl. Ex. A.)  In other words, the rate Plaintiff charged fee-paying clients for her time was apparently $250 per

10

hour in 2005.  This is the best evidence of market rates
Plaintiff submitted as of 2005.  Because it is the rate
Plaintiff's counsel charges paying clients, the Court finds it to
be the best evidence of a reasonable rate, on the record before
it, in 2005.

While it is clear that Ms. Douglass' hourly rate of $250 in
2005 was a reasonable market rate (and Defendants have submitted
no evidence to the contrary), the reasonable hourly rate must be
determined for the current year the fee award is entered, which
is three years later in 2008.  This is because the "reasonable
rate" in the lodestar calculation is the current rate, not the
historical rates that may have prevailed when the case was filed
and when much of the work was performed.  Rode v. Dellarciprete,
892 F.2d 1177, 1183-89 (3d Cir. 1990); Lanni v. State of New
Jersey, 259 F.3d 146 (3d Cir. 2001).  The current rate in 2008,
rather than the historic rates of 2005, 2006 and 2007, must be
used in the Third Circuit to reflect the delay in payment for
services rendered in past years, measured by current market
rates.

In the present case, Ms. Douglass has certified that her
hourly rates were $250 in 2005 and 2006, $275 in 2007, and $300
in 2008.  (Douglass Cert. At ¶ 9.)  Her $300 rate was recently
approved by a judge in an employment case this year involving a
federal employee.  (Id. at 11.)  Defense counsel's invocation of

a settlement demand figure used by Ms. Douglass during unsuccessful pretrial negotiations in this case is obviously inadmissible under Rule 408, Fed. R. Evid., and has no proper place in this argument.

The Court finds that Plaintiff has provided ample support for counsel's requested current hourly rate of $300, and that such rate is reasonable in light of the market rate for well-experienced litigation counsel in employment cases in 2008.  Ms. Douglass has shown herself to possess considerable ability and skill in trial.  A plaintiff seeking fee-shifting is not required to exhaustively reconstruct the legal market with scientific precision.  Plaintiff has sufficiently demonstrated that, for an employment attorney of Ms. Douglass' experience and ability, a local market rate of $300 is reasonable.  The billing practices of three other practitioners in this area, as discussed above, reflect this figure, and Ms. Douglass' current rate in 2008 is within the range of reasonableness.  Of course, in recognizing this high figure as a reasonable hourly rate for successful and experienced employment counsel, the Court will hold Ms. Douglass to this high standard when evaluating the reasonableness of her time spent in this litigation, and in assuring that ministerial or non-attorney duties are not compensated at this high rate.

**D.   Hours Reasonably Expended**

1.   <u>Unnecessary or Excessive Time</u>

Plaintiff's counsel is entitled to the rate of $300 per hour on the record before the Court because she has 20 years of experience practicing as a successful employment lawyer and Plaintiff prevailed on claims brought via 42 U.S.C. § 1983.  That significant rate buys a client the efficiency, experience and expertise of an attorney practiced at representing clients in just this type of litigation.  See A.V. v. Burlington Twp. Bd. of Educ., No. 06-1534, 2007 WL 1892469, at *9 (D.N.J. June 27, 2007) ($250 is a "generous" rate for education law lawyers in this community and is justified only because specialized, experienced attorney shows efficiency).  The Third Circuit thus requires an attorney to justify the expenditure of time in an efficient manner consistent with the experience that was reflected in the hourly rate:

> [T]he lodestar computation is a two-edged sword. A fee applicant cannot demand a high hourly rate -- which is based on his or her experience, reputation, and a presumed familiarity with the applicable law -- and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be condoned. Our cases supply no authority for rewarding non-stop meter running in law offices.
>
> Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

<u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983) (citations omitted).

The Court has examined Ms. Douglass' detailed fee statement dated February 6, 2008 (Douglass Cert. at Ex. F), detailing 630.35 hours of time expended and seeking fees of $166,042.50 plus costs in the sum of $6,832.56, as well as Defendants' objections thereto and Plaintiff's reply.

The Court will first examine whether the time claimed was reasonably expended as being necessary, not excessive or duplicative, and of the type of legal work that a lawyer (rather than a paralegal or secretarial staff) reasonably and customarily performs.  That analysis follows by focusing upon the items in controversy that require adjustment, while other items of services not mentioned herein are sustained as reasonable and necessary to the results obtained even if not specifically discussed herein.

Accordingly, the Court finds that the 17.5 hours Plaintiff's counsel spent researching the law and drafting the Complaint in this action is excessive, especially in light of the barebones theories of recovery set forth in the Complaint.  (See entries for April 9, 2005 (9 hours),  April 10, 2005 (4.5 hours) and April 11, 2005 (4 hours)).  The Court shall reduce those 17.5 hours to a reasonable time of 12 hours.

14

Plaintiff also billed at the attorney's rate for additional work on the Complaint that could have been performed at a reduced rate by Plaintiff's counsel's paralegal.[1]  Although Plaintiff's counsel is a solo practitioner, she has had the assistance of a paralegal and secretary throughout this litigation and some of the tasks billed by counsel are precisely the type of work paralegals are employed to perform.  On April 11, 2005 Plaintiff's counsel spent .1 hours preparing the civil cover sheet for this case and .3 hours preparing a summons, each of which could be performed by the paralegal.  Accordingly, the reasonable billing rate for this .4 hours of time shall be reduced to $75, which is the approved paralegal rate herein.

Plaintiff's counsel concedes that the time entry for the initial scheduling conference on August 3, 2005 should be reduced from 3 to .3 hours.

On May 4, 2006, Plaintiff's counsel has a billing entry for 9 hours of searching for evidence at a PBA Local Hall.  This work was unnecessary for an attorney to perform.  Although Plaintiff's counsel, as a solo practitioner, is certainly entitled to do such work, she is not entitled to bill her adversary for it as legal services, given that searching for discrete evidence, even in

---

[1]  "[T]he 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." Missouri v. Jenkins, 491 U.S. 274, 285 (1989). Plaintiff asserts that the paralegal rate is $75 per hour and Defendants do not challenge this.

15

messy boxes, is precisely the type of work a paralegal can perform to assist an experienced litigator.  Accordingly, while the nine hours is not an excessive amount of time, one hour of legal time (which would have been required to guide the paralegal effort) and eight hours of paralegal time will be awarded.

On January 9, 2008, Plaintiff's counsel bills, among other things, 14 hours for the preparation of a slide show presentation to be used at trial.  The power-point presentation bound together the legal and factual theories for trial, which is the function of trial counsel.  Some of these hours are excessive and unnecessary for the attorney.  The attorney could reasonably spend 8 hours creating and reviewing the content of the slide show.  A paralegal, skilled in using technology and computers, would reasonably expend approximately four hours on creating and editing a slide show.  Accordingly, this entry shall be reduced to compensate for 8 hours at the rate of $300 and 4 hours at the rate of $75.  In addition, the 2 hours the paralegal expended "working on connection to projector and laptop" shall be reduced to 1 hour.  The additional ten hours Plaintiff's counsel expended reviewing the slide show with her client and preparing additional slides, on January 11, 12 and 13 2008, shall be reduced to 8 hours of attorney time and 2 hours of paralegal time.  Similarly, the additional 8 hours Plaintiff's counsel claimed for editing the slide show presentation and doing a mock trial analysis, on

16

January 17, 2008 shall be reduced to 6 hours of attorney time and
2 hours of paralegal time.

Plaintiff's counsel also billed for five hours of attorney
time on January 18, 2008 for traveling to the courthouse with her
client to do a trial run with the slide show.  This entry
includes travel time, which the Court assumes to be 2.5 hours,
and trial preparation time of 2.5 hours, which is reasonable.
The travel time will be compensated at half-rate which is $150
per hour (see discussion in subpart D.3, below), and the trial
preparation time will be included at the full rate.

Further, the Court finds that the request for thirteen hours
of paralegal time on January 22, 2008 to "attend trial" is
unreasonable.  The Court's records [Docket Item 64] indicate that
Court was in session from 9:30 a.m. until 12:30 p.m. and then
again from 1:30 until 5:30 p.m. on January 22, 2008.  The Court
will assume that 2 hours of additional paralegal tasks were
performed before and after the court session and during the noon
hours, so that the number of paralegal hours will be reduced from
thirteen to nine on January 22, 2008.

On January 28, 2008, Plaintiff's counsel has two entries of
10.5 hours and 14.0 hours, each for trial preparation, conference
with client, travel to Camden and attendance at trial.  The
record reflects that it was a long trial day, and the Court
accepts the 14.0 hour figure, which will be compensated as 11.5

17

hours at the legal rate and 2.5 hours at the travel rate.  The
duplicate figure of 10.5 hours will be deleted in its entirety.
All other claimed hours of attorney time are approved, as
summarized on the charts, below.

        2.   <u>Time Spent on Distinct, Unsuccessful Claims</u>

     In addition to excluding the hours unreasonably expended on
this litigation, the Court shall exclude those hours expended in
pursuit of distinct claims on which Plaintiff was not successful.
<u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. at 434-35 (distinct
unsuccessful claims not entitled to fee compensation).  Plaintiff
did not prevail on all claims asserted in this litigation.
Therefore, Plaintiff's award of attorneys' fees must be reduced
to reflect his degree of success in this action in accordance
with the principles articulated in <u>Hensley v. Eckerhart</u>.

> Where a plaintiff presents different claims for
> relief that are based on unrelated facts and legal
> theories, courts should exclude fees for time
> expended in unsuccessful claims.  However, where
> much of counsel's time was devoted generally to the
> litigation as a whole, making it difficult to
> divide the hours expended on a claim-by-claim
> basis, the district court should focus on the
> significance of the overall relief obtained by the
> plaintiff in relation to the hours reasonably
> expended on the litigation. [T]he most critical
> factor is the degree of success obtained.  In
> exercising its discretion in fixing the award, the
> district court may attempt to identify specific
> hours that should be eliminated, or it may simply
> reduce the award to account for the limited
> success.

<u>Field v. Haddonfield Bd. of Educ.</u>, 769 F. Supp. 1313, 1322
(D.N.J. 1991) (internal citations, quotations, and footnotes
omitted); <u>see also</u> <u>Holmes v. Millcreek Twp. School Dist.</u>, 205
F.3d 583, 595-96 (3d Cir. 2000) (awarding one-fourth of fees
where plaintiff prevailed on some but not all claims)

When this Court granted summary judgment to Defendants in
part on June 14, 2007, it essentially declared that Plaintiff
could not be a prevailing party on two distinct claims of the six
claims in the Complaint: a defamation claim – related not to the
transfer or protected First Amendment conduct, but to what
Defendant Snellbaker allegedly said about Plaintiff to others,
that Plaintiff was not trustworthy, to disguise the actual reason
for the transfer – and the interference with employment
relationship claim –  a claim under New Jersey law either
relating to Plaintiff's ability to get a job with another
employer or to some alleged contractual right to a specific
position.  These claims were substantially distinct, both in
terms of the facts and the law, from the retaliatory transfer
claim under the First Amendment on which Plaintiff ultimately was
the prevailing party.  Furthermore, Plaintiff's remaining state
law claims, although asserted and litigated through this time
period, were not successful.  Because Plaintiff's counsel's time
records between the beginning of her consultation with Plaintiff
and June 14, 2007 do not reflect the amount of time spent on each

category of claim, only two-thirds of the time spent on the case prior to June 14, 2007 is compensable, pursuant to Hensley and Field. This two-thirds allocation of counsel's time as necessary legal work upon the prevailing First Amendment retaliation claim recognizes that two-thirds of counsel's work was related to the successful First Amendment claim, even though the successful claim was one claim among many asserted in the Complaint. The First Amendment retaliation claim was the dominant claim, and the discovery and early case activity focused on the entire factual background that eventually unfolded at trial. Where discovery and other litigation activities largely relate to the successful claim, such services are compensable even if they also relate to the unsuccessful claims. The same work was largely required whether the unsuccessful claims were pursued or not. Excluding one-third of the overall time is a reasonable approximation of time that can be characterized as devoted solely to the unsuccessful claims at that state of litigation. Moreover, the result obtained on the successful claim was robust compared with whatever could have been gained upon the unsuccessful claims. This first period of time, from March, 2005, to June 14, 2007, is included as Category "A" on the chart below, and the two-thirds time multiplier is shown for each entry.

Between the time the Court granted summary judgment for Defendants and the time the Court granted in part the Rule 50

motion of Defendants, Plaintiff's counsel was working on two separate categories of claims, the First Amendment claim and the New Jersey statutory claim for failure to follow a specific process in transferring Plaintiff.  Plaintiff was a prevailing party on only one of those claims, the First Amendment retaliation claim, when the Court dismissed the state law claim at the opening of court on January 29, 2008.  Because Plaintiff's billing records do not reflect the time spent on each category of claim, the time expended must be reduced by the time unrelated to the unsuccessful claim between June 14, 2007 and January 28, 2008, after excluding noncompensable, duplicative, excessive, or unnecessary time, to arrive at the reasonable hours expended on this litigation in furtherance of claims on which Plaintiff was a prevailing party.  For this period of time - June 14, 2007 through January 28, 2008 - the exclusion of time related solely to the state law claim will be 15 percent.  In other words, because the federal constitutional claim was by far the dominant claim to which substantial efforts were necessarily devoted during this period of time, and little attention was paid exclusively to the prosecution of the state claim under N.J.S.A. 40:14-147, the Court finds that an award of 85 percent of the otherwise compensable time will fairly compensate for counsel's efforts in securing the favorable verdict in this case.  The

chart below reflects the entries for this time as Category "B" and the 85 percent multiplier is applied as shown.

At the close of trial, the Court granted remittitur to Defendants. However, because the Court denied the motions for judgment as a matter of law, the Court shall deem Plaintiff a prevailing party on those motions and shall not categorically reduce counsel fees for the time expended on this litigation between January 31, 2008 and September 2008. For this final time period, the total approved amount is reflected on the chart below without reduction for any lack of success.

In addition to these categorical reductions in time expended in this litigation, Plaintiff's counsel is also seeking fees for time spent dealing with other, unrelated litigation, apparently against a previous attorney who initiated some action in New Jersey state court. The billing entries for these claims indicate no connection to this action, other than the individuals involved. Accordingly, the time spent on this other litigation should be excluded. Specifically, Plaintiff's counsel recorded time spent on that unrelated litigation of 1.25 hours on March 28, 2005 and .3 hours on March 31, 2005. This time should also be excluded from the lodestar calculation, as reflect in the chart below for these dates.

      3.   <u>Travel Time</u>

In addition to the adjustments discussed above, Defendants ask the Court to reduce the rate of compensation for travel time while Ms. Douglass was traveling to and from meetings, conferences, depositions and trial.  Generally, time spent in travel is compensable at the attorney's rate if legal work is being performed during travel.  <u>Planned Parenthood of Cent. N.J. v. Attorney General of N.J.</u>, 297 F.3d 253, 267 (3d Cir. 2002); <u>Daggett v. Kimmelman</u>, 617 F. Supp. 1269, 1282 (D.N.J. 1985); <u>accord</u>, <u>Cruz v. Local Union No. 3</u>, 34 F.3d 1148, 1161 (2d Cir. 1994) (permitting inclusion of travel time at 50 percent of attorney's billable rate); <u>McDonald v. Armontrout</u>, 860 F.2d 1456, 1462-63 (8th Cir. 1988) (same); and <u>Erhart v. City of Atlantic City</u>, 2006 WL 2385061 at *8 (D.N.J. 2006); <u>but see</u> <u>Furtado v. Bishop</u>, 635 F.2d 915, 922 (1st Cir. 1980) (excluding travel time entirely from lodestar).

Generally, travel time is compensable in New Jersey, <u>Planned Parenthood</u>, <u>supra</u>, 297 F.3d at 267 (citing <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1225 (3d Cir. 1995)).  As in <u>Erhart</u>, this Court will recognize all claimed travel time but reduce the rate to one-half of counsel's 2008 rate of $300 per hour, rendering a travel rate of $150 per hour where there is no indication that

23

legal services were rendered en route.[2]  Accordingly, the following travel-related adjustments will be made:

1.  September 6, 2005 - Travel to and from defense counsel's office.  Attorney time of 2 hours will be compensated 1.2 hours of legal time, 0.8 hours at travel rate.

2.  October 1, 2007 - Travel to and attendance at Pretrial Conference in Camden.  Attorney time of 4 hours will be compensated 1.5 hours at legal rate, 2.5 hours at travel rate.[3]

3.  The second entry of October 1, 2007 is a duplicate, so 4 hours is eliminated from the total claimed.

4.  January 22, 23, 24, 28, 2008 - Travel to and attendance at trial in Camden on four dates; 10.0 hours will be shifted from legal rate to travel rate.

---

[2] Although Plaintiff's Reply Brief at 18 asserts that counsel traveled with Plaintiff or witnesses and engaged in witness preparation and "discussion of the day's events," there is no such indication in the actual billing statement records in Ex. F.  It is the assumption that some travel time is devoted to case preparation that justifies the partial rate of $150 for travel time, but without greater specificity of counsel's efforts during the travel the premium rate is not justified here.

[3] The Court allows 1.25 hours for travel in each direction from Ms. Douglass' Northfield, NJ office to Camden, for a total of 2.5 hours of travel round trip.

5.  January 29, 2008 - Travel and appearance at trial in Camden and post-trial jury charge conference. The 12 hours claimed will be recognized as 9.5 hours at the legal rate and 2.5 hours at the travel rate.

6.  January 30 & 31, 2008 - Travel to Camden and appearance at trial on two dates; 5.0 hours will be shifted from legal rate to travel rate.

**E.    Calculation of the Lodestar**

Applying the rules set out above to the attorney's fees requested in this case, the Court finds that Plaintiff is entitled to $138,506.75 to compensate for the fees reasonably expended for attorney services in this case, excluding costs and paralegal fees:

| Dates | Attorney Hours Claimed | Attorney Hours Permitted | Reasonable Fee at $300 for legal; $75 for paralegal; $150 for attorney travel |
|---|---|---|---|
| 3/28/05 | 2.25 | 2.25 × 2/3 | $          450.00 |
| 4/1/05 | 3.00 | 3.0  × 2/3 | $          600.00 |
| 4/6/05 | 1.50 | 1.5  × 2/3 | $          300.00 |
| 4/9 - 4/11/05 | 17.50 | 12.0  × 2/3 | $        2,400.00 |
| 4/11/05 | 0.40 | 0(.40× 2/3 at paralegal rate) | $           20.00 |
| 4/15/05 - 5/1/06 | 101.60 | 101.6  × 2/3 | $       20,320.00 |
| 5/4/06 | 10.00 | 1.1 × 2/3 (plus 8 at paralegal rate × 2/3) | $          620.00 |

| Dates | Attorney Hours Claimed | Attorney Hours Permitted | Reasonable Fee at $300 for legal; $75 for paralegal; $150 for attorney travel |
|---|---|---|---|
| 5/5/06-6/14/07 | 139.20 | 138.4 × 2/3 (plus 0.8 hrs. at travel rate × 2/3) | $           27,760.00 |
| **SUBTOTAL A** | | | $           **52,470.00** |
| 6/20/07-1/8/08 | 55.60 | 49.1 × .85 (plus 2.5 hrs. at travel rate × .85) | $           12,733.00 |
| 1/9/08 | 16.50 | 10.5 × .85 (plus 4 hrs. at paralegal rate × .85) | $            3,132.50 |
| 1/11-1/13/08 | 10.00 | 8.0 × .85 (plus 2 hrs. at paralegal rate × .85) | $            2,167.50 |
| 1/15/08-1/16/08 | 11.00 | 11   × .85 | $            2,805.00 |
| 1/17/08 | 12.50 | 10.5 × .85 (plus 2 hrs. at paralegal rate × .85) | $            2,805.00 |
| 1/18/08 | 5.00 | 2.5 × .85 (plus 2.5 hrs. at travel rate × .85) | $              956.25 |
| 1/19/08-1/29-08 | 225.50 | 202.5 × .85 (plus 12.5 hrs at travel rate × .85) | $           53,217.50 |
| **SUBTOTAL B** | | | $           **77,816.75** |
| 1/30/08-2/6/08 | 29.90 | 24.9 (plus 5 hrs. at travel rate) | $            **8,220.00** |
| **Total Attorney** | | | $          **138,506.75** |

Thus Plaintiff will recover attorney's fees in the amount of $138,506.75.

26

Plaintiff is also entitled to $6,439.25 to compensate for the paralegal services reasonably expended in this case:

| Dates | Paralegal Hours Permitted | Reasonable Paralegal Fees at $75/hour |
|---|---|---|
| 4/11/05–1/26/07 | 61.0 × 2/3 | $        3,050.00 |
| 7/02/07–1/23/08 | 43.4 × .85 | $        2,766.75 |
| 2/04/08–2/06/08 | 8.3 | $          622.50 |
| **TOTAL** | | **$        6,439.25** |

Plaintiff incurred $4,493.73 in additional costs in the initial phase of this case, which shall be compensated at a rate of 2/3, due to the limited success in this litigation, yielding $2,995.82.  In the second phase of litigation, from June 15, 2007 until January 29, 2008, Plaintiff incurred an additional $2,196.09 in costs.  However, $722.86 of that was spent on a slide projector, a capital expenditure that counsel will have use of for years, in both successful and unsuccessful litigation. While the Court is not willing to say that the use of the visual aids during trial was unnecessary, the Court must account for the relative value of the use of the projector in this case. Assuming that counsel shall have use of it for approximately seven years, the Court finds the reasonable compensable cost of the projector to be approximately $100.  Accordingly, the costs for this period shall be reduced by $622.86 to $1,573.23 which shall be compensated at 85 percent yielding $1,337.25.  Since

January 30, 2008, Plaintiff's counsel has incurred $126.10 in costs, for which Plaintiff shall be fully compensated. Accordingly, Plaintiff shall be awarded $6,439.25 (paralegal), plus $2,995.82 (costs before June 15, 2007), plus $1,337.25 (costs from June 15, 2007 to January 30, 2008), plus $126.10 (costs since January 30, 2008), for a total of $10,898.42 in costs including paralegal fees.

## III. OTHER CATEGORIES OF REQUESTED RELIEF

### A.   Augmentation for Tax Liability

Plaintiff argues that he is entitled to an increased compensatory damage award, or "make whole" relief, to offset the federal taxes he will have to pay on his damage award in this case.  Plaintiff cites no authority for this sort of relief under 42 U.S.C. § 1983 and the Court is aware of none.  Indeed, had Plaintiff earned these wages as he claims he should have, of course he would have paid taxes on them; the Court has no authority to circumvent Congress's intent that he do so when he won them back in litigation.  See Spina v. Forest Pres. Dist., 207 F. Supp. 2d 764, 777 (N.D. Ill. 2002) (refusing to augment jury award to successful § 1983 Plaintiff who would have to pay whole amount after attorney's fees to IRS).  Accordingly, the Court shall deny this request for augmentation of the award.

28

**B.    Prejudgment Interest**

Plaintiff seeks prejudgment interest to make Plaintiff whole for the lost use of his income, that is on his back pay and emotional damages awards, pursuant to New Jersey Court Rule 4:42-11(b).  As the Third Circuit explained in Coleman v. Kaye, this Rule provides no basis for awarding prejudgment interest to a prevailing party under 42 U.S.C. § 1983.  87 F.3d 1491, 1511 (3d Cir. 1996).  In addition, as to the City of Atlantic City, as that case also explains, the Rule expressly prohibits such an award against a public entity, in the absence of a statute providing otherwise, and Plaintiff has pointed to none.  Therefore, the Court shall deny the motion for prejudgment interest.  See also Wojtkowski v. Cade, 725 F2d 127, 129-31 (1st Cir. 1984) (prevailing plaintiff not entitled to prejudgment interest on amount allowed by court as attorney fee under 42 U.S.C. § 1988).

**C.    Post-judgment Interest**

The award of post-judgment interest is mandatory, pursuant to 28 U.S.C. § 1961 and need not be separately awarded by the Court.  However, the Court notes that Plaintiff's counsel, in requesting $502.68 per day on the jury verdict of $796,000 has made two errors.  First, pursuant to the Court's recent decisions, the entire judgment in this case was reduced on

29

remittitur to $382,400 compensatory plus $75,000 punitive damages.

Second, Plaintiff's counsel performed an arithmetic error, so that the actual amount of daily interest would be reduced by an order of ten, approximately. In any event, the Court need not calculate the post-judgment interest at this time. The decision is final as of this date and post-judgment interest has not yet accrued. It accrues in the future at the statutory rate.

The accompanying Order will be entered, awarding attorney's fees in the amount of <u>$138,506.75</u> and costs (including paralegal fees) in the amount of <u>$10,898.42</u>, and denying the enhancements sought.


<u>September 23, 2008</u>                    **<u>s/ Jerome B. Simandle</u>**
Date                                   JEROME B. SIMANDLE
                                       U.S. District Judge

30